UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
J.C. McCRARY,

                    Petitioner,

       -against-

WILLIAM LEE, Superintendent of
Green Haven Correctional Facility,

                 Respondent.
-------------------------------------------------------------X
FEUERSTEIN, District Judge:

**OPINION AND ORDER**
**12-CV-2867 (SJF)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   APR 2 7 2015   ★

LONG ISLAND OFFICE

Before the Court is J.C. McCrary's ("petitioner') petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.[1] For the following reasons, petitioner's application is **DENIED**

and the petition is dismissed.

I.    **Introduction**

On January 25, 2007, a judgment of conviction was entered in the County Court, Nassau

County, New York, ("the trial court"), upon a jury verdict finding petitioner guilty of: two (2)

counts of robbery in the first degree; one (1) count of criminal possession of a weapon in the

second degree; and three (3) counts of criminal possession of a weapon in the third degree. Aff.

Resp. ¶ 8. Petitioner was sentenced to concurrent terms of imprisonment of: twenty-five (25)

years on each of the robbery convictions; fifteen (15) years on the second-degree weapon

conviction; seven (7) years on each of the third-degree weapon convictions; and five years of

post-release supervision for each conviction. Id.

---

[1] Petitioner's habeas corpus application was accompanied by a motion for discovery pursuant to
Rule 6 of the Rules Governing Section 2254 Cases, which was denied. McCrary v. Lee, No. 12
Civ. 2867, 2013 WL 784581, at *1 (E.D.N.Y. Feb. 26, 2013).

## II.     Background

### A.     Facts

On September 3, 2005, petitioner, armed with a loaded revolver, robbed a convenience store located at 1027 Front Street, Uniondale, Nassau County, New York. Id. at ¶ 5. During the robbery, a cartridge fell out of petitioner's gun. Id. After a short chase, police apprehended petitioner as he hid in bushes located within three blocks of the store. Id. Upon searching petitioner, police recovered three-thousand, thirty-eight dollars ($3,038) in robbery proceeds, two (2) pistol grips and a loaded revolver with petitioner's fingerprint, a defaced serial number and a cartridge identical to the one that had fallen from his gun. Id. Within approximately forty-five (45) minutes of the robbery, three (3) eyewitnesses identified petitioner as the perpetrator. Id.

### B.     Proceedings

#### 1.     Pretrial Hearing

On March 8, 2006, the Honorable Joseph C. Calabrese ("Judge Calabrese"), County Court, Nassau County, New York, held a pretrial hearing to determine the admissibility of the property recovered from petitioner, his statements and the witness identifications, at which Officer Brandon Hillman ("Hillman"), Detective Anthony Bonkowski ("Bonkowski") and Detective Thomas Fleming ("Fleming") testified. Aff. Resp. pp. 3-4; DE 8-2 ("H. Tr.").

Hillman testified that he and Officer Garcia ("Garcia") were parked across the street from the convenience store when they were flagged down by two (2) individuals who advised that a robbery was in progress. H. Tr. 12-14, 32-33, 35-36. Hillman then received a radio transmission

about the robbery and drove to the store. H. Tr. 13-15, 30, 32. As he approached the store, Hillman saw Officers Ciaccio ("Ciaccio") and Lopez ("Lopez") drive through the intersection of Front Street and Uniondale Avenue in their patrol car. H. Tr. 14, 36. Lopez later broadcast the direction in which the suspect was running while Ciaccio pursued him on foot; Ciaccio described the suspect as a male Hispanic, approximately 5'9" tall, wearing a black T-shirt and blue jeans. H. Tr. 15, 37-38. As Hillman drove in Ciaccio's direction, he witnessed petitioner run in front of his car. H. Tr. 15-16. Petitioner wore a black T-shirt, blue jeans, and a doo rag, which fit the general description of the suspect, and was running away from the store when two (2) bystanders pointed at petitioner and said, "There he goes." H. Tr. 16-17, 45-48, 50, 59-60. Ignoring Hillman's warning to stop, petitioner ran to the front yard at 1079 Midland Street. H. Tr. 16-18. Hillman ran after him, spotted petitioner in a bush and drew him out at gunpoint, at which time Garcia handcuffed petitioner and Hillman searched him, finding two (2) pistol-handle grips ("grips") inside his right front pants pocket. H. Tr. 18-19. Under some nearby leaves, police found a loaded gun without grips, a black doo rag and a stocking. H. Tr. 173-177, 183-188. Hillman felt something in petitioner's left front pants pocket, but did not remove the object because it was soft and presumably not a safety threat. H. Tr. 54. When Ciaccio arrived at the scene, he identified petitioner as the same individual from the convenience store. H. Tr. 22-24.

Bonkowksi, the detective assigned to investigate the robbery, testified that police separately took three witnesses to the location where petitioner was detained and each identified him as the perpetrator. H. Tr. 25-27, 65, 69-70, 84-95. Petitioner was taken to the station house and again searched by Hillman, who recovered approximately three-thousand dollars ($3,000), a latex glove, a nut and screw and a set of car keys. H. Tr. 24-25, 56.

3

After being advised of his rights, petitioner voluntarily told detectives, "I have been using crack for the last two years. Since I got out I have been spending every dollar I get on it. Only time I stopped was to get over for an alcohol program. I am not going to talk about today. I don't want to waste your time." H. Tr. 101-103. When petitioner finished talking, Bonkowski asked him if he was willing to answer questions and when petitioner declined, the interview ended. H. Tr. 97-103.

While processing the arrest several hours later, Bonkowski asked petitioner about the car keys and petitioner advised that they belonged to "a girl" and that he had taken a bus to the area. H. Tr. 104, 110, 113, 133-134. Bonkowski had police search the area near the crime scene for the car which matched the keys, which was located approximately one (1) block from the crime scene; Bonkowski testified that he observed the packaging from a doo rag on the car's floor. H. Tr. 106-109.

Hillman testified that from the time he first saw petitioner until the time the witnesses were brought to the area where he was detained, petitioner wore a dark doo rag on his head. H. Tr. 141-142. Additionally, a black doo rag was found on the ground near petitioner, although it was not the one petitioner had worn. H. Tr. 143, 146-147. Bonkowski testified that the doo rag recovered from petitioner's head was transparent and vouchered as "gray" in color. H. Tr. 155-156.

By decision and order dated May 17, 2006, the hearing court suppressed the statements made to police regarding the car keys, but otherwise denied petitioner's suppression motion. Hr. Order p. 6, DE 8-23. Among other things, the court held that the police had: (1) reasonable

4

suspicion to stop and detain petitioner; (2) probable cause to arrest petitioner; and (3) lawfully searched petitioner and the area immediately surrounding him. The court also held that petitioner had abandoned the gun and lacked standing to challenge the search of the car containing the doo rag packaging. Id. at pp. 3-6.

### 2. Trial

On June 9, 2006, petitioner's jury trial before the Honorable Jeffrey S. Brown ("Judge Brown") commenced in the Supreme Court, Nassau County, New York. Ciaccio testified that the first time he saw petitioner was at approximately "7:52 pm in between the front of the store and the rear of the store along the side." T. Tr. at 813, DE 8-6. In response to defense counsel's question as to whether petitioner's description had been transmitted over the police radio at the time the officer observed him, Ciaccio responded "no" and admitted that he had no information about the robbery at 1027 Front Street. T. Tr. 864. When asked why he approached petitioner, Ciaccio responded that "[h]e was the only person not running towards the police." T. Tr. 815. Lopez testified that immediately after Ciaccio began pursuing petitioner on foot, a radio call came in regarding a robbery in progress at 1027 Front Street between Uniondale and Valcor Avenues. T. Tr. 961.

After Ciaccio's and Lopez's testimony, defense counsel sought to reopen the suppression hearing, arguing that Ciaccio's trial testimony implicated the probable cause finding and Hillman's testimony from the hearing. T. Tr. 1127-31, 1175-77. Judge Brown denied the motion to reopen, but permitted defense counsel to make the application before the hearing judge, Judge Calabrese (T. Tr. 1130-31), who also denied the motion. T. Tr. 1175-77.

On June 21, 2006, at the conclusion of trial, petitioner was found guilty of the counts charged in the indictment and on January 25, 2007, was sentenced as a second violent felony offender to concurrent terms of imprisonment of twenty-five (25) years on each of the robbery convictions, fifteen (15) years on the second-degree weapon conviction, seven (7) years on each of the third-degree weapon convictions and five (5) years post-release supervision. Aff. Resp. ¶ 8.

### 3.    Post-Trial

On appeal, petitioner's assigned appellate attorney, Martin Goldberg, Esq. ("Goldberg"), filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), indicating there were no meritorious issues warranting an appeal. Aff. Resp. ¶ 9. By affirmation dated December 26, 2007, Goldberg requested that a different attorney be assigned to the case based upon "belligerent" telephone calls from a person who identified herself as petitioner's sister. Id. On or about March 7, 2008, Goldberg was relieved and the case was assigned to Stefani Goldin, Esq. ("Goldin"). Id.

On appeal, Goldin alleged, *inter alia*, that: (1) police had neither reasonable suspicion to seize petitioner nor probable cause to arrest him; (2) the physical evidence recovered near the location of the arrest was discarded in reaction to unlawful police conduct; and (3) the denial of petitioner's request to reopen the suppression hearing deprived him of a fair trial. Aff. Resp. ¶ 10.

By order dated March 23, 2010, the Appellate Division affirmed the judgment and held that: (1) the hearing court properly denied petitioner's motion to suppress the physical evidence

and identification testimony; (2) the trial court did not improvidently exercise its discretion in denying petitioner's motion to reopen the suppression hearing; and (3) petitioner's remaining contentions were unpreserved for appellate review and were, in any event, meritless. People v. McCrary, 896 N.Y.S.2d 876 (N.Y. App. Div. 2010). On August 20, 2010, New York's Court of Appeals denied petitioner's application for leave to appeal the Appellate Division's order affirming the judgment. People v. McCrary, 934 N.E.2d 901 (N.Y. 2010).

In or around January 2011, petitioner moved, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, to vacate his judgment of conviction on the grounds, *inter alia*, that the government violated Brady v. Maryland, 373 U.S. 83 (1963) by failing to disclose exculpatory material, i.e., three (3) minutes and twenty (20) seconds of allegedly missing information from the police Mobile Data Transmission ("MDT")/Radio Message Log for two (2) officers who, petitioner alleged, falsely testified at trial. Aff. Resp. ¶ 16. By decision dated April 13, 2011, Judge Calabrese summarily denied the motion, holding that: (1) petitioner had been provided with the MDT logs prior to trial and "could have explored these issues on the record in a manner providing adequate basis for review on appeal;" (2) petitioner's arguments were unsupported by the facts; (3) the MDT logs did not contradict or undermine the officers' testimony; and (4) there was no evidence that the allegedly missing information had not been provided to petitioner. Id. at Exh. 12. By order dated September 22, 2011, the Appellate Division denied petitioner's application for leave to appeal from the order denying his § 440.10 motion. Id. at Exh. 17. By order dated November 23, 2011, the Court of Appeals denied petitioner's application for leave to appeal the Appellate Division's order. People v. McCrary, 959 N.E. 1029 (N.Y. 2011).

On November 1, 2011, the Appellate Division denied petitioner's application for a writ of

error coram nobis, People v. McCrary, 931 N.Y.S.2d 891 (N.Y. App. Div. 2011), and on January 11, 2012, the Court of Appeals denied petitioner's application for leave to appeal. People v. McCrary, 963 N.E.2d 131 (N.Y. 2012).

On June 4, 2012, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging various constitutional violations, to wit: (1) the government's use of hearsay testimony failed to establish probable cause for his arrest; (2) the trial court denied his request to reopen the suppression hearing despite Ciaccio's trial testimony; (3) the government failed to disclose Brady material that would have established that Ciaccio's and Lopez's trial testimony was fabricated; and (4) the state court was biased in denying petitioner's § 440.10 motion. Petitioner also alleges that he was denied the effective assistance of counsel.

## II.    Discussion

### A.    Legal Standard for 28 U.S.C. § 2254 Petitions

"In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution, or any laws and treaties of the United States." *McCool v. New York State*, 29 F. Supp. 2d 151, 157 (W.D.N.Y. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)).

As amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 28 U.S.C. § 2254(a) provides that a "district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or

8

treaties of the United States." A federal court may grant a writ of habeas corpus to a State

prisoner where the federal claim was "adjudicated on the merits" in state court if adjudication of

the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1]

"An 'adjudication on the merits' is a "substantive, rather than a procedural, resolution of

a federal claim.' " *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (quoting *Aycox v. Lytle*,

196 F.3d 1174, 1178 (10th Cir. 1999)). A "state court 'adjudicate[s]' a state prisoner's federal

claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its

disposition to judgment." *Id.* (quoting 28 U.S.C. § 2254(d)(1)). "When a state court does so, a

federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state

court's decision on the federal claim—even if the state court does not explicitly refer to either the

federal claim or to relevant federal case law." *Id.*

---

[1]  "This standard of review, as opposed to the standard existing prior to the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996, is more deferential to state court decisions." *Garry v. Greiner*, No. 01 Civ. 0848, 2003 WL 21436217, at *2 (S.D.N.Y. June 19, 2003).

## B.    Petitioner's Fourth Amendment Claim

Petitioner claims that the state court arbitrarily denied his motion to reopen the suppression hearing despite trial testimony, which allegedly established that the probable cause finding was based upon Hillman's false hearsay testimony.

In Stone v. Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 495 (1976) (internal footnote omitted). "The basic inquiry is whether the state prisoner was given the opportunity for full and fair litigation of his Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977). "If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available." Id. (citing United States ex rel. Petillo v. New Jersey, 418 F. Supp. 686, 689 (D.N.J. 1976)). Furthermore, "even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted." Id.

In the state court, petitioner moved to suppress: (1) items seized at the time of his arrest and while he was detained as resulting from an arrest made without probable cause; (2) his oral statements as involuntary; and (3) the showup identifications. Resp. Exh. 23. Petitioner also sought to preclude any in-court identifications as tainted. Id. After a hearing, the state court held that: (1) police had probable cause to arrest petitioner; (2) the showup identifications were temporally and spatially proximate to the crime; (3) petitioner's oral statement, made while he was read his Miranda rights, was spontaneous; and (4) petitioner's statement regarding the car keys was suppressed because police asked about them after petitioner declined to answer any

10

questions.

During trial, petitioner sought to have the suppression hearing reopened based upon Hillman's allegedly false testimony, which the trial court denied, but granted petitioner permission to raise the issue with Judge Calabrese, who denied the request. H. Tr. pp. 1173-75. Petitioner also raised his Fourth Amendment claims on direct appeal to the Appellate Division, which held that contrary to petitioner's contentions, "the trial court did not improvidently exercise its discretion in denying his motion, made during the trial, to reopen the suppression hearing." People v. McCrary, 896 N.Y.S.2d 876, 877 (N.Y. App. Div. 2010). Additionally, the Court of Appeals denied leave to appeal. People v. McCrary, 934 N.E.2d 901 (N.Y. 2010).

Based upon the foregoing, petitioner was given and full and fair opportunity to litigate his Fourth Amendment claims in the state court and, consequently, this Court can grant habeas relief only upon a showing that there was an unconscionable breakdown in the state court's processes.

"The federal courts have approved New York's procedure for litigating Fourth Amendment claims, [embodied] in New York Criminal Procedure Law § 710.10 *et seq.* . . . as being facially adequate." Durakovic v. Scully, No. 89 Civ. 1471, 1989 WL 62335, at *1 (E.D.N.Y. May 31, 1989). See *Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Pro. Law § 710.10 *et seq.* (McKinney 1984 & Supp. 1988), as being facially adequate.' ") (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)).

The record demonstrates that petitioner used these procedures to contest the alleged Fourth Amendment violations and, therefore, cannot establish that an unconscionable breakdown in the state processes prevented him from presenting his claims. For these reasons, this claim is dismissed.

11

## C.    Whether the Trial Court Improperly Denied Petitioner's Request to Reopen the Suppression Hearing

Petitioner claims that his due process rights to present a defense were violated when the trial court denied his attorney's request to reopen the suppression hearing based upon Officer Ciaccio's testimony, which allegedly contradicted Hillman's suppression hearing testimony.

"A ruling by a state trial court on an evidentiary question is a matter of state law that poses no constitutional issue, in the absence of any showing by the petitioner that the ruling rendered a trial fundamentally unfair." Vasquez v. Kelly, No. 98 Civ. 0352, 2004 WL 1574556, at *5 (W.D.N.Y. June 25, 2004) (citing Tirado v. Walsh, 168 F. Supp. 2d 162, 170 (S.D.N.Y. 2001)).

As discussed above, petitioner was given a full and fair opportunity to litigate his evidentiary claims and the trial court properly exercised its discretion, in accordance with CPL § 710.40(4),[2] in denying his request to reopen the suppression hearing. In addition, the trial court granted petitioner leave to move before Judge Calabrese, who also denied the request. Finally, the trial court's decision was affirmed by the Appellate Division and the Court of Appeals denied leave to appeal and, accordingly, petitioner's Fourth Amendment claim has had full appellate review.

"Under these circumstances, 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is

---

[2]  This section provides: "If after a pre-trial determination and denial of the motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, it may permit him to renew the motion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial."

12

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.' " Vasquez, 2004 WL 1574556, at *5 (quoting Estelle v. McGuire, 502 U.S. 62-67-68 (1991)). In light of the foregoing, petitioner has not established a constitutional violation and this claim is dismissed.

## D.    Whether Petitioner's Post-Judgment Motion was Properly Denied

Petitioner claims that the state court improperly denied his CPL § 440.10 motion, which requested that judgment be vacated based upon the government's failure to provide Brady material, i.e., three (3) minutes and twenty (2) seconds of radio transmissions from Unit 107A's MDT/Radio Messages Log. Resp. Exh. 9 at p. 6. Petitioner argued that the gap in transmissions established that Officers Ciaccio and Lopez could not have observed petitioner, or anyone else, running along 1027 Front Street because they were at a different location performing a traffic stop. Id. Petitioner also argued that the officers' testimony was contrived to bolster the government's case and support a finding of probable cause. Id.

The state court denied the motion and held that petitioner was in possession of the transmission logs prior to trial and "could have explored these issues in a manner providing adequate basis for review on appeal" and that the failure to do so was cause to deny collateral relief. Resp. Exh. 12. The court also held that petitioner's arguments were factually unsupported because nothing in the logs specified the officer's location at the relevant time and thus, the testimony was neither contradicted nor undermined by the logs. Id. Finally, the court held that despite his allegation that the missing time was material, petitioner had not established that anything was, in fact, missing and thus, it was unnecessary to address his claim that the alleged gap in time contained exculpatory material. Id.

13

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

The state court held that petitioner failed to prove that there was any missing material in the first instance and, consequently, it did not decide whether said material violated Brady. Thus, as a matter of law, petitioner cannot allege that the government violated his due process rights and habeas relief is unavailable. Accordingly, this claim is dismissed.

E.      Whether the State Court was Biased

Petitioner contends that the state court was biased against him because: (1) it refused to determine petitioner's *pro se* pretrial motion to dismiss;[3] (2) Judge Calabrese was either removed or recused himself from petitioner's case based upon petitioner's complaint against him; and (3) the court improperly denied petitioner's § 440.10 motion. Pet. pp. 40-43. Respondent argues that petitioner's claim is procedurally barred. Mem. Resp. p. 48.

Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). "A

---

[3]  *See* Pet. Exh. H.

state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." Id.; see Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (holding that a federal court may not review a state prisoner's federal claims if the claims were denied in state court pursuant to an independent and adequate state law ground); Walker v. Martin, 132 S. Ct. 1120, 1127-28 (2011) (accord).

Exceptions to the procedural default doctrine exist where: (1) the prisoner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, Martinez, 132 S. Ct. at 1316; Coleman, 501 U.S. at 749-750; or (2) that failure to consider the claim will result in "a fundamental miscarriage of justice," i.e., "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986); see also Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012). A "claim of actual innocence must be both 'credible,' " i.e., supported by new reliable evidence that was not presented at trial and compelling, i.e., it is " 'more likely than not, in light of the new evidence, no juror would find him guilty beyond a reasonable doubt.' " Id. (quoting House v. Bell, 547 U.S. 518, 538 (2006)).

Pursuant to CPL § 450.15(1),[4] there is no right to appellate review of an order denying a motion under § 440.10 and, thus, such review is discretionary. The first time petitioner raised his

---

[4] "If an appeal by defendant is not authorized as of right pursuant to section 450.10, the defendant may appeal from the following orders of a criminal court, provided that a certificate granting leave to appeal is issued pursuant to section 460.15: (1) An order denying a motion, made pursuant to section 440.10, to vacate a judgment other than one including a sentence of death. . . ."

bias claim was when he sought leave to appeal from the Appellate Division.[5] Where a claim is presented for the first time in an application for discretionary review, the claim has not been fairly presented to the state court. See Castille v. Peoples, 489 U.S. 346, 351 (1989); see also St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004). Accordingly, petitioner's claim has not been fairly presented to the state court and is procedurally barred unless he can demonstrate cause for the default and actual prejudice resulting from the alleged violation of his due process rights.

"In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" Senkowski, 374 F.3d at 184 (quoting Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted). The "prejudice" requirement involves not just a showing of a possibility of prejudice, but a showing that the alleged errors worked to petitioner's "actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Thus, petitioner's claims that the state court was biased are prejudicial only if they are meritorious. See Cappiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1998); see generally Gomez v. Brown, 655 F. Supp. 2d 332 (S.D.N.Y. 2009).

Petitioner argues that the state court was biased in denying his *pro se* pretrial motion to dismiss, which he filed while represented by counsel. Under New York law, a defendant is not

---

[5] The Appellate Division denied the application. Petitioner also sought leave to appeal from the Court of Appeals. "[R]eview of the denial of a Section 440.10 motion is available only in the Appellate Division and only by leave of a judge thereof." Ramos v. Walker, 88 F. Supp. 2d 233, 236 n.9 (S.D.N.Y. 2000). New York's Court of Appeals has "no jurisdiction to review orders denying leave to appeal from orders denying Section 440.10 motions." Id.

16

entitled to "hybrid" representation and whether a court will consider a *pro se* motion under these circumstances is discretionary. See People v. Rodriguez, 741 N.E.2d 882, 885-86 (N.Y. 2000). Accordingly, the state trial court properly exercised its discretion in declining to decide petitioner's motion and this claim is meritless.

Petitioner's argument that Judge Calabrese was removed from his state criminal case based upon his complaint to the Honorable Anthony Marano, Supreme Court, Nassau County (Pet. Exh. F), alleging that Judge Calabrese improperly refused to decide his *pro se* motion, is similarly meritless. Petitioner points to no evidence that Judge Calabrese either recused himself or was removed from the case and, indeed, petitioner does not know.[6] Moreover, it is equally, if not more, plausible that Judge Calabrese neither recused himself, nor was removed; instead, the motion was transferred to the Honorable William C. Donnino,[7] Supreme Court, Nassau County, after Judge Calabrese declined to decide it.

Finally, petitioner argues that Judge Calabrese's order denying his § 440.10 motion was biased because it did not consider petitioner's attempts to obtain the alleged three (3) minutes and twenty (20) seconds gap in the MDT transmissions. On the contrary and as discussed above, the court held that petitioner was in possession of the transmission logs prior to trial and that his failure to raise this issue and preserve it for direct appeal was cause to deny collateral relief. Resp. Exh. 12. Additionally, the court held that petitioner's arguments were unsupported by fact

---

[6] *See* Pet. p. 40 ("Judge Calabrese had been removed, removed himself, from McCrary's case based on a complaint filed by McCrary to the Administrative Judge, Anthony Marino [sic], Supreme Court . . . .").

[7] Judge Donnino's order notes that petitioner's defense attorney adopted the motion after it was transferred. Aff. Resp., Exh. I.

17

because nothing in the logs specified the officers' location at the relevant time. *Id.* Accordingly, petitioner has not demonstrated that his contentions are meritorious and thus, his bias claim is dismissed as procedurally barred.

### F.      Ineffective Assistance of Appellate Counsel Claim

In part, the Sixth Amendment of the Constitution provides: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Strickland v. Washington, 466 U.S. 668, 691-92 (1984).

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Furthermore, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In evaluating an ineffective assistance claim, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and a defendant bears the burden of overcoming the presumption that counsel's decisions were sound. Id. at 689. Accordingly, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id.

Petitioner alleges that his appellate counsel was ineffective because she failed to investigate and determine whether the three (3) minute and twenty (20) second gap in

transmissions was a <u>Brady</u> violation or whether trial counsel had provided ineffective assistance. Petitioner had sought a writ of error coram nobis to vacate the Appellate Division's order dated March 23, 2010, which affirmed the trial court. The Appellate Division held that petitioner failed to establish that he was denied the effective assistance of appellate counsel, <u>People v. McCrary</u>, 931 N.Y.S.2d 891 (N.Y. App. Div. 2011), and the Court of Appeals denied leave to appeal, 963 N.E. 131 (N.Y. 2012).

"Neither <u>Anders</u> nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." <u>Jones v. Barnes</u>, 436 U.S. 745, 751 (1983). Furthermore, subsequent to his direct appeal, petitioner raised the claim concerning the gap in the radio transmissions in his § 440.10 motion to vacate judgment. As discussed above, the state court denied the motion, holding that there was no <u>Brady</u> violation, and the Appellate Division denied leave to appeal. Thus, appellate counsel's decision not to raise this issue on direct appeal was not, in retrospect, objectively unreasonable. According, appellate counsel's assistance was not ineffective and petitioner's Sixth Amendment claim is dismissed.

## III. Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus is **DENIED** and the proceeding is dismissed in its entirety. As petitioner has failed to make a substantial showing of the violation of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(1); <u>see also</u> <u>Miller –El v. Cockrell</u>, 537 U.S. 322, 336 (2003); <u>Contino v. United States</u>,

19

535 F.3d 124, 127 (2d Cir. 2008). Petitioner has the right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court shall enter judgment in favor of respondent, close this case, and serve notices of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to petitioner at his last known address.

**SO ORDERED.**

Dated: April 27, 2015
        Central Islip, New York

                                    s/ Sandra J. Feuerstein
                                    _____
                                    Sandra J. Feuerstein, U.S.D.J.